Thank you, your honors. Good morning. My name is Lynn Hartfield, and I'm from the Federal Public Defender's Office, and I represent the appellant Michael Norris. We raised three issues in this appeal, and I'd like to start with the Weber issue. Now, in this case, I don't think there can be any serious contention that the district court below adhered to this court's very clear directive from Weber. And that is that if the court is going to impose this very draconian condition of plethysmograph testing, it has to adhere to a very well-delineated procedure, and that didn't happen here. The court in Weber made a very thorough analysis of just how intrusive plethysmograph testing is, why it's intrusive, why it implicates important liberty interests, and why that requires the court to do more than just rubber stamp what the appropriation office offers. Well, assuming that Weber is controlling in the Ninth Circuit, there's also Sixth and Seventh Circuit cases that involve, I think, United States v. Lee and United States v. Rhodes, which talk about that it not being right for judicial review. Do you think that they have any bearing on that, that we don't need to review it now and it would be later, and at that time later than you make the Weber findings? Well, Your Honor, this court, of course, has not previously declined to take up the issue on redness grounds. In Weber, in fact, that was an explicit consideration. But in Weber, the person was already on release. Here, we're talking some 20 years out, 2028 or so is the release date. That's the difference that I think we need to consider. Well, I certainly think that from a practical standpoint, the ripeness concerns in this case, they dovetail with what the Sixth and Seventh Circuits were concerned about. We have somebody here who's serving a 25-year sentence. We really can't predict what the state-of-the-art in sex offender treatment is going to be at that point. One would hope, actually, with all the criticism directed at platysma graft testing, that it would be no more. On the other hand, I think while this particular case certainly raises concerns about ripeness, we don't want to have a system where every time a court imposes a supervised release condition that's either illegal or improperly done, that the defendant has to wait until they're released from prison to make that argument. Well, what's the burden and what's the injury to your client at this point? Excuse me? What's the burden and what's the injury to your client at this point for, because he's going to do a substantial sentence and it doesn't come into effect until the supervised release. How will it affect him now, from now to the next 20 years? Well, Your Honor, I think your point is well taken, that at the moment he has no injury. No, it's not, because that applies to every condition supervised release. Another 20 years later, you're under drug testing. Twenty years from now, you might have to see a psychiatrist. Twenty years from now, you might wear an ankle bracelet, which might be obsolete. I mean, doesn't that apply to every condition that follows a long-term imprisonment? Yes, Your Honor, and that was what I was trying to get at, is the fact that we can't have a system where courts can simply impose illegal or improper supervised release conditions, and then the defendant has to wait until they get out of prison to challenge those conditions. With every supervised release condition, the harm doesn't occur until the person's actually out. The difference we have here is that we have a condition that is possibly not going to even be around, and we have an extremely long sentence. So I think in this particular, limited to this case, the Sixth and Seventh Circuits would have a point. However, I don't think that we can apply that to every supervised release condition in every case, and particularly with plethysmograph testing, with people who have more reasonable sentences of, say, five years, ten years, the district court really needs to go through that analysis so that this court can review whether such a condition is warranted. Well, and so basically your best arguments, as it were, is it's the government's burden to show that this condition is appropriate. Weber is the law of the circuit in the Ninth Circuit, and so the court's got to determine it now, and if they can't meet it now, then it just shouldn't be there all those 20 years, and then he wouldn't have the burden when he gets out of trying to challenge it. That's correct. Because in 20 years, then he would have to challenge it. Here it's the government's burden to show that it's justified, right? Well, that's correct, and the problem with challenging supervised release conditions is that once somebody's out, they're obligated to follow those conditions, and if they violate them, then they're subject to revocation. You know, there are some contexts, I think, where it's easier to ask forgiveness than it is to ask permission, but this is not one of them. This is a situation where the defendant is subject to the conditions of supervision, and in order to get them modified, they risk being revoked. Well, the other problem is they may not have counsel when they get out, right? I mean, if they had court-appointed counsel that's not in the PDs, they don't come running in the door after someone's out of prison, and certainly if it's retained counsel, they don't do that. So, I mean, there is a real-life concern about how they get back into the court to ask for a modification of a condition after their release. I think as long as the Sixth Amendment's in place, the person would have the right to counsel. But the difficulty, again, is that the way that this is likely to come up is that they're going to have to violate first and then be brought into court. But Weber has made clear that's not part of the calculus. We cannot allow that to happen. In other words, Weber says you need not violate in order to have standing essentially to challenge you. That's true, and perhaps there's a possibility that Mr. Norris could challenge this before he's released, but that does present practical problems. That's what they called a softball. I think he just gave you a softball. So you don't argue with a softball. What about the state conviction? What's the status of that? The state conviction right now is on appeal. It's not final yet? No, it's not. And for that reason, I think the Setzer issue is still live. So is he asking on appeal that the appeals court change the state sentence from concurrent to consecutive? No. So presumably not. So what's the issue? Why is this issue still alive? He got credit for the four years in state custody by the BOP, correct? That's not clear at the moment, but he did get a concurrent sentence with the state sentence, which is longer than the federal sentence. But if you look at his release date, it appears he got credit for that time served. Yes, it would appear, because he's to be released in 2028. So why isn't this just moot at this point? The reason is because the state case is on appeal. We don't know what's going to happen with that. He could have his conviction reversed. He could then either be retried or he could work some kind of a plea deal with the state. In that case, he'd be appearing for resentencing, and it's certainly possible at that point that a state judge could decide to impose consecutive time, particularly if, for example, he is retried and he's convicted of a lesser offense, or if the state and he entered into some sort of a plea deal that's more favorable to him. Isn't that sort of wildly speculative, though, that he's going to appeal? The government's not appealing. He's appealing. And, gee, he might end up worse off than he is before he appealed, and therefore this issue isn't moot. Again, he certainly could. I think that's a very real possibility if he were to win his state appeal. What are the grounds for the appeal? I had spoken with his attorney, and he is appealing the conviction itself. He's not appealing the sentence. So it's trial issues, whatever those might be. Exactly. And that does create a real possibility of reversal, and that does create a possibility of renegotiating a plea or retrial, in which case he could be convicted of something lesser. But he pled in state court, didn't he? No. Or was there a trial? He had a trial. He had a trial in state court. I believe he did, yes. Do you want to save some time for rebuttal? Yes, Your Honor. If the Court has no further questions, we'll stand on briefs with respect to the third issue. Thank you. Good morning, Your Honors. Michael Dionne on behalf of the United States. Your Honors, I'll start by talking about the ripeness issue. I think that Mr. Norris' counsel either conceded or came very close to conceding that if you apply the analysis in Lee and Rhodes, then you would say that this case is not ripe for review. The only thing is, though, any time you – it would appear to me at this point, though, Weber makes it the government's burden to show that that condition should be applied, and it requires some rather specific findings, which arguably are not here on this record. So then, you know, 20 years from now or however long from now, then the defendant, you know, and I could see someone coming back and saying, well, gosh, you know, they waived challenge, and they should have done that. But then even if it's ripe, then he's – it's almost like you get the benefit of shifting the burden at that point because he has to go find a lawyer. He has to come in and challenge it, and then you are alleviated from justifying the burden because it's already in place. And any time, you know, burden of proof can be an – well, we consider it an important concept, and that's where I'm questioning whether the ripeness, you know, then you get the benefit of a shift of the burden of proof, and I think Weber doesn't say you should. I think that's a good point. We shouldn't get the benefit of that burden, and there's no reason that we would have to. If this court finds today that this matter is not ripe for appeal, then there's no reason there shouldn't be any procedural bar to Mr. Norris raising this appeal once it's ripe, once he's out. I can't believe that. But he has to comply for, let's say, how long it takes to get things on calendar. Maybe in 20 years it takes six months to get on calendar. So then he has to do this testing for six months before, so he would be damaged. Yeah. Mr. Young, let me ask you this question about ripeness. First of all, are you familiar with U.S. v. Rodriguez-Rodriguez on the ripeness issue? I think that's one of the Ninth Circuit cases. Yes, it is. That as a general matter, supervised release violations are ripe for review when imposed. Yes. Now, isn't that – in other words, there was an argument there made that a supervised release condition was not ripe, right? In other words, the argument was that the injury to the defendant is hypothetical as it depends on several contingencies that have not – that have yet to occur, such as the completion of a 77-month sentence and so forth. Now, this is, I think, the holding. The reporting condition is a part of the district court sentence, which is the final judgment subject to immediate appeal, citing 3742A. We have stated clearly that a defendant may challenge the legality of a supervised release condition by direct appeal. Isn't that a holding that binds us? I think there's no question that that is the general rule in this circuit. All right. Now, why does not the general rule apply to this case then? Because I think that the placismograph, and in the circumstances of this case, presents a very unusual, if not almost unique, situation. First of all, the length of the sentence we're talking about. Not 77 months. It's even much longer than the length of the sentences. But the problem becomes, so where's that line? And it seems almost like an impossible line to draw that is 10 years, 12 years, 15 years, 20 years. And if it is an impossible line to draw, then why not make this easy and say you always have that standing? Essentially, it's always right. Well, and I agree. It is tricky. Where do you draw the line? I don't think you draw the line based on time alone. I think what makes it clear that wherever the line is, this case is somewhere well past it, is the combination of time and all the uncertainties and contingencies. You know of any other, I'll say, group of orders or rulings that a district court makes on which appealability is subject to that kind of characterization. In other words, sometimes it's appealable and sometimes it's not, depending on all these conditions. I mean, isn't appealability usually just, you know, it's pretty black and white, isn't it? I think it is. It's categorical. And you're trying to make this not categorical. Well, it depends on how long it is. It depends on what the condition is, right? It depends on maybe how old the defendant is. Because the defendant is, say, 70 and has got a 30-year sentence. I mean, why bother, right? I mean, why should a right to appeal be contingent on those kinds of conditions? Well, I think the reason that the Lee and Rhodes courts decided that it wasn't right is just that there are so many tricky issues here, so many uncertainties. And why put – So the criterion is if there's a tricky issue, it's not appealable, huh? No, no, not based on that alone, Your Honor. It's the combination of things. The challenges of the issue, the long sentence, and, again, the tremendous uncertainty that the condition will ever be imposed. Well, but this isn't intrusive. This isn't a minor condition. And so if you ask for it and you feel that it's appropriate and you have the burden, why not just show it, get it done? And then if 30 years later science has changed and it's debunked, then that's a whole other situation. I mean, certainly it would be perfectly consistent with the Rodriguez-Rodriguez case and the Ninth Circuit's other law on this issue to hold that. I'm not going to stand here and argue that Ninth Circuit law compels you to find that this is not right. But I think that there are valid arguments in this limited situation for following the approach that the Lee and Rhodes courts took. On the other hand, if we have this question as to when an appeal is ripe, as Judge Deschina states, aren't we going to spend in the judiciary as a whole more time determining that than it would just take to remand and make the findings one way or another? Or to say, as an AUSA, I can't present you with the necessary findings under Weber. And then 30 years from now, come back in and ask for modification based on the science of the time. I actually think, given all the uncertainties, it might save judicial resources because I think there's a good chance that many of these issues would ultimately never need to be litigated. If the treatment provider doesn't actually, because this is not a mandatory condition, this is at the treatment provider's option, if the treatment provider doesn't think it's worthwhile, you never have to decide the issue. If the technology changes, case law changes, you never have to decide the issue. That's an interesting question, but your time is starting to run down. I have that feeling. Maybe it's our fault. But, you know, the other interesting question is, in this case, is the interplay between the state and federal sentences, right? And I'd like to hear your views on that. And there's an important point that we should have made in our briefs that we didn't. In the Setzer case, the defendant was going to serve his state sentence first and then come into federal custody, which meant that as a practical matter, either the federal court or the BOP was going to have the practical power to decide whether the sentence was concurrent or consecutive. We are in the opposite situation here. He's serving his federal sentence first. Well, let me stop you there. But there is an additional wrinkle, which is he did four years from August 2006 until early 2011 in state custody. Then you have this March 2011 letter between, I don't know, yourself or someone in your office and the local prosecutor saying, here's an agreement and we are going to take over primary jurisdiction. So I know there's always confusion in these sentencings. When people start talking about, is the Bureau of Prisons going to give credit for time served for that state time? And everyone flails about not sure what the rules are, not sure what the Bureau of Prisons might do or might not do. So isn't the consecutive versus concurrent out of the federal court, that determination, isn't that relevant to what happens to those four years? Except for the fact that as Norris' counsel has conceded, he's clearly getting credit for that time. So he couldn't hope to be any better off in that respect than he is right now. So if the credit, you mean state credit? The federal system, because they've calculated his release date as 2028, apparently is giving him credit. The BOP apparently is giving him credit for that time. Now let me be clear. When you say that time, you're talking about the four years? Yes. The early four years? Yes. Okay. So because the four years are being applied to his federal sentence, this is no different than that case where from the very beginning, the main primary jurisdiction is within the federal court. Right. And therefore, it's sort of what the federal court says. You're just talking into the wind. There's no one to listen to you, so to speak. Right. Ultimately, the state court will decide, either give him credit against his state sentence for the time he served here or force him to serve the entire state sentence consecutively. The federal judge has no real power. Clearly, it's against his judicial philosophy, and I don't think anything in Setzer would change that, especially in a case where he'd be in the position of making a meaningless pronouncement because as a practical matter, he's not going to have any ability to enforce that once the defendant gets turned over to state custody. Well, okay, but that's the question. He's not going to have the ability because why? Because the defendant is going to be out of federal custody and serving state custody. The state will either say, we're going to give him credit, we're going to count that time he served in federal custody against his state time or we're not. I don't think there's anything that the federal judge can do. Is it easy to find out for sure with 100% certainty whether or not he got credit in the federal sentence for that time served? It should be easy. If we as a panel decide we want to know that with certainty as opposed to both counsels saying we think so, is that something you can provide to us? I don't see why I can't reach out to the BOP and get an answer to that. That shouldn't be a problem. Because it seems to me it's totally moot if that's the case. I agree. So wouldn't you think you would have that information if you were going to say it was moot? I never know with the BOP, but would two weeks be okay? But how long? Well, you've known this was coming. It would seem that someone would be able to provide us with that today. I can try, Your Honor. I'm happy to try and get the answer to that today. All right. Did any panel members have additional questions? All right, thank you. If I get the answer, how do I get it to the court? I think just like a 28-day letter is good enough, isn't it? All right. Thank you, Your Honor. Thank you. Your Honor, I just wanted to address one other point on the Setzer issue. And that's just that the Supreme Court ---- By the way, you don't have any objection to our getting this further information from the BOP, do you? No, Your Honor, I don't. But I wanted to draw the Court's attention to the Setzer Court's statement. The Setzer Court said that it is more respectful of the State's sovereignty to make this decision up front. And we don't have that here. It's not moot because the State case is still on appeal. And when a State judge potentially has to resentence Mr. Norris, the State judge needs the benefit of the Federal Court's opinion on whether this case should be served concurrently or consecutively. So you're now talking just about a recommendation from a Federal judge, is what you're talking about. I mean, is that something we should really even be involved in, an appeal as to whether ---- I mean, certainly if Judge Breyer was right that he doesn't have to make this determination under the primary versus secondary jurisdiction issue, then isn't it just a recommendation? Just like I may not recommend a particular institution at the Bureau of Prisons, that's not subject to appeal, is it, as a district court judge? I mean, that's not subject to appeal. It seems to me that Setzer contemplates that situation and says that in the Supreme Court's opinion issued in Setzer, the Federal judge should be making a statement about whether an as-yet-to-be-imposed State sentence should be concurrent or consecutive.  In Setzer, the State is the primary jurisdiction in Setzer. No. No, it looks like the ---- I believe that the defendant was first indicted on the Federal charge. Then the State moved to revoke State supervision. So actually the Federal ---- Mr. Dionne told us the opposite, so I suppose we need to go back. So you're saying that for us to say concurrent right now, then that your hope is that that would tie the hands with the State court regardless of whatever happens in the future? So that it essentially immunizes him if he goes on appeal, you know, has another trial, and, you know, I mean there's a little bit of a saying, be careful what you ask for, and sometimes people abandon their appeals because they could face more time. So, you know, we're not saying ours would be consecutive. I mean, we want that amount of time served. But you're saying you want us to bind the State court, that the State court would not be able to say theirs was consecutive? Your Honor, that's the way I read Setzer. Okay. Wait a minute. Just to be clear, I know the time is running. Go ahead. A Federal judge cannot bind a State court on this matter. That seems to me absolutely clear. If I, in my role as a district court judge, sentence somebody as the primary jurisdiction in Federal custody first, they're then going to go into State custody and plead guilty. I cannot bind that State court judge to a concurrent sentence. I do not have that power. At best, what I can do is make a recommendation. Setzer does not break out that formulation, and it doesn't do so for good reason, because this is a very complex area with a lot of moving parts, and Setzer didn't try to address all of those moving parts. But I think there's no question but that I, as a district court judge, when I sentence first and I have primary jurisdiction over that defendant, I cannot bind the State court by saying this will be a consecutive or concurrent sentence. The State court goes last and can control what happens in State court. Well, again, I guess I think you probably read Setzer wrong. The debate will continue when we go into conference. I think we have both of your arguments in mind. Thank you, Your Honor. Thank you both for your arguments. This matter will stand submitted.
judges: Seabright, Tashima, Callahan